How did you enter that room? I had the right-hand guide. Sometimes you have to open something. Mr. Miller, you reserved five minutes of your total time for rebuttal, correct? That's correct, sir. All right. Thank you, sir. You may proceed. Good morning, Your Honors. My name is Stu Miller. I'm the interim counsel for Petitioner, in this case, Karen Wilson, if it pleases the Court. Petitioner Wilson appeals to this Court essentially on the basis of three assignment of errors involving a denial of due process. She alleges that on two occasions in two separate matters, the agency, the United States Postal in taking the action against her, denied her due process, and also, unfortunately, during processing before the Merit Systems Protection Board, the Board itself had the effect of denying her access to the MSPB process and, accordingly, due process of law. The first assignment of error is that the appellant's petitioner's length of service with the agency, which was 24 years at the time of the agency action, reducing her in pay, was considered an aggravating factor by the deciding official in this case. Counselor, one of the concerns that I had when I started reading your brief is that you're asking us to make a factual determination. You're asking us to re-weigh the facts that were determined below. Can you address that? Which facts do you speak of, Judge Reynolds? Well, we're talking about how about your constitutionally sufficient notice argument? Well, in this case, Your Honor, the constitutionally deficient notice, both parties agree that the evidence to this issue was the same. The appellant was given a notice of unsatisfactory performance. In that notice, the agency stated that she exercised poor judgment, acted unprofessionally on many occasions, and humiliated subordinate employees occasionally by making comments or yelling. And as a result of that conduct, that she had fostered the creation or the maintenance or the continuation of a hostile work environment. That's what the letter says, Your Honor, that's correct. That's the, quote, offense. Right. Now- The offense is hostile work environment because you did the following offense. Following events. And then they don't- No. But the agency doesn't- Stop for a second. I think what the presiding judge was saying to you was that he was reading, as I did to some extent, you in essence challenging that these facts took place. Are you- No. You're not- Are you challenging the fact that she was found to have bullied or to have behaved in the way that the behavior was found? No. What we're saying, Your Honor, is simply that the agency is required to give specific notice of the charges against you. A broad statement of you created a hostile environment is not specific. You have recited what was in the notice that said your offense for which you're being demoted, et cetera, is creation of a hostile workplace. And the creation of the hostile workplace is as a result of your doing the following things. And you're saying there was insufficient information to her about what she had done? Correct. It doesn't give you any detail as to what you said, who you said it to, when you said- You're separating what I'll call the charge from the appendix that was attached to the charge, right? Correct. The document, the charge, had something attached to it. Is it your argument that the attachment is legally irrelevant? No. Legally insufficient. MSPB case law holds without equivocation that you can attach something to a proposal letter that further defines the charge. So now I finally understand what the presiding judge was saying. So you take this appendix to the charge that's got a lot of stuff in it. In fact, you say it's got too much stuff in it, right? Correct. The question is, did the appendix give Ms. Wilson sufficient notice of the conduct that she was being charged for that creates hostile work environments? And we say no, Your Honor. Simply because- And the question is, is that a fact question or a law question? No, I believe it's a law question. Whether that notice constitutes specific notice as required by 5 U.S.C. 7513. But don't you have to then look into the details, the factual details of what's in the appendix? Well, what concerns me is the finding by the administrative judge on the board that the evidence that it was sufficient is the fact of a 200-page reply to the notice with 300 pages of attachments. Petitioner contends because she did not notice- That's the reply that your client gave, right? Correct. And because she did not- There was all this talk about this, you said it's a 200-page thing. Correct. I can't find that. We called for the record and got the record for your response. And the response that you filed was like about six or seven pages. Is that actually right? No, her response to the agency at the agency level was indeed, I don't think there's any dispute- It's not 200- 200 pages long. No, no, it's not. I mean, it's a document that had a search with a letter that's signed by your client that's seven pages long, right? No, she responded at the proposal level with 200 pages plus 300 pages of attachments. Her response was over 500 pages long. Notice of proposed, this was filed September 26, 2011. I can only tell you, Your Honor, that- Well, I can tell you, we called for the entire record from the MSPB. There is no such thing as a 200-page with 300 pages attached to it. It should have been in the agency response file to the board, Your Honor. But our argument- Let's go back to the notice and my original question. It seems to me that you're arguing that the deciding official made the decision on the basis of length of service as an aggravating factor. That's correct, Your Honor. That's kind of like the core of your argument. And then later, that question, whether that was a deciding factor or not, was retracted in a deposition, and you're arguing that it still survives that. Is that not a factual determination you're asking us to make? No, sir. I'm asking you to determine that the statement was made. It is a fact. The statement was made, but the deciding official then submits an affidavit. And that affidavit says that she had not considered the length of Ms. Wilson's service as an aggravating factor in enhancing the penalty. And the A.J. credited that as true. Well, the agency credited it as true, Your Honor, without an explanation as to why. That's a question of the trial level looking at something and saying true or false, which becomes a fact question. And this plays in with our third assignment of error, which was that the administrative judge abrogated responsibility to require the agency to respond to the motion for a hearing based on the aggravating factor evidence. And therefore, the appellant was never apprised of that explanation as to what constituted the deciding official's intent. At the deposition- You never saw that affidavit? No, I didn't see the affidavit, Your Honor. The appellant didn't see the affidavit until the agency had missubmitted its closing argument, to which there was no responsible closings allowed. The appellant withdrew a request for a hearing because the administrative judge continually refused to have the agency respond as to what the deciding official meant. When the motion was filed saying, this is a denial of due process using as an aggravating factor, the agency did not respond in 10 days. Consequently, the appellant filed a motion requesting a decision. The administrative judge then held a conference, and the agency responded with, there are disputed facts, which would negate approving the motion. But the judge did not compel them then, or in writing at any time after, to have the agency state what those disputed facts were, which would have been the affidavit explaining it. So we're here, and you submit the record, and you submit the briefs, and you're asking us to resolve this dispute. Well, I'm asking you on behalf of the appellant to find that there was a due process violation, but in the alternative, if there is no due process violation, the case should be remanded, and it should be started all over with the same motions, and then an adjudication if necessary. The appellant would request, however, based on this record, that if it is remanded, that it be remanded with specific instructions to go to a different judge. If there is a due process violation, the underlying issue there is whether or not the length of service was an aggravating factor. If that was a determining factor? That was a core issue raised by the appellant, yes. That was the basis of the motion. So you're asking us to find that it was, that the AJ did make a decision, or rather, that the decision below was based on the length of service as an aggravating factor. The administrative judge said she believed the deciding official's explanation, and she did so without reason. She didn't explain it, and the board invented an explanation. Aren't you simply saying that you don't believe that the credibility explanation flies? There's no rationale for it. There is no credibility determination other than I believe it. It's just a matter of saying, I mean, so we know what the record says. The record, the original deposition says, I considered her service to be an aggravating factor, period. Correct. And then later on, there's the affidavit that comes in that's in the full record. It's long, eight pages long. And she says, no, I only considered it for credibility. She said, I concluded that due to Wilson's length of service, in addition to her position and her experience looking into HWE claims, when Wilson denied exercising poor judgment, denied being unprofessional, blamed others, she was not credible. Right? Correct. That's her explanation. Now, I think what your argument to us is that the AJA made a mistake to accept the subsequent affidavit because it's irrational. Correct. If you look at the context of the question that she answered, I considered it an aggravating factor. You could see the subject was penalty selection. So her response about credibility makes no sense. The whole basis for credibility. So what Johnson was saying later in her affidavit is she should have known that using poor judgment, she should have known that berating staff and otherwise would create a hostile work environment. Therefore, I find her incredible. What's important here, Your Honor, is that if that affidavit were introduced in response to the motion for judgment, then the appellant could have prepared to adjudicate that at a hearing by calling witnesses or cross-examining Ms. Johnson on that matter. But we did not see that affidavit until closing submissions, which closed the record and no response was forthcoming. Okay. You're into your rebuttal time and I'll restore you back to your five minutes. Okay. Thank you, sir. Mr. Yale? May it please the Court, Nathaniel Yale on behalf of the United States Postal  Can I ask you a question about the affidavit we've just been talking about? Yes, Your Honor. Elizabeth Johnson's affidavit. Let's just assume, I know the government doesn't like assumptions, but let's put in the record and that all that we had in this case was testimony from the deciding official that she had considered the length of service to be an aggravating factor. What would be the right result? What happens if that's what the record shows? I don't think the analysis is really as simple as that. I mean, I think... I'm just going to ask you a question. Can you answer it? Well, I think the analysis, you would first have to look at the letter decision, which is at J820. I'm asking you, assume that the deciding official says, I take your private service against you as an aggravating factor. Is that lawful or unlawful? That particular statement would not be lawful. But again, I mean, I think as we mentioned in our briefs at the deposition, it seems apparent that, you know, the deciding official... So if I were to decide that the credibility explanation doesn't hold water, if I were to get rid of the subsequent affidavit, then all I would have left in the record was the aggravating... the taking for aggravating purposes. And you say that would have been legally impermissible. Well, that's not all that you would have. You would also have the letter decision, which... that the years of service is being looked at as a mitigating factor and not an aggravating factor. So just based upon the record, I don't think just the deposition testimony, frankly, alone would be sufficient. Where in the record is this previous information about taking it as a positive factor? At J820, the letter decision? At paragraph 3? J820. Okay. 20, you say? 0020, yeah. Paragraph 3. I can't find it. Go ahead. And again, I would also stress, as we laid out in our briefs, that certainly the question was asked and answer was given, but the deposition stopped shortly thereafter. And again, there was the declaration, which was submitted before the close of the record, but also if Ms. Wilson had not waived her hearing, she would have had an opportunity to have all these issues aired at the hearing. And so we certainly think that based upon those three pieces of evidence, the letter decision, the deposition transcript, as well as the declaration, that what the judge was looking at was the fact of whether or not the deciding official actually considered years of service as an aggregating factor. We certainly don't think there's enough in the record to, you know, suggest that there should be some sort of reweighing of that evidence. And so we think Ms. Wilson's argument falls apart at that point. We'd also like to address the notice argument. How did the link? Talk about the link of service and credibility. What's the rationale underneath Johnson saying, I take your link of service to mean you're not credible? Just run me through a few sentences of how that explanation works out. Sure. Well, I think what we'd be pointing to is that J.A. 1598, which is the declaration, she specifically... This is Johnson's declaration? Correct. Johnson's declaration on J.A. 1598 and 1599. She specifically stated when Wilson denied exercising court judgment, denied being unprofessional. Sorry. It's J.A. 1598 to 99. Paragraph. 1598. Yeah. Paragraph 23 going on to 1599. Okay. Yes. I got it. And putting... So what's the notion? The notion is the longer you serve, the more honest you're supposed to be? No, I... That's not it? That's not it. I mean, to put this into context... The longer you serve, the more you're supposed to know what constitutes bad behavior in the workplace? Well, certainly in her position, she's the director of human resources. So when... I understand that. But I mean, what's the length of service got to do with credibility in this case? Well, as the director of human... She's denying that she did things, right? She's denying that she threatened people, she abused people. She's denying that she was a tough boss or whatever, right? Correct. And so the credibility goes... Does the credibility go to whether she was telling the truth about those things? Correct. But the longer you serve, the more honest you're supposed to be. I mean, we don't think it's simply the longer you serve, the more honest you're supposed to be. I think it's laid out in paragraph 23 that as the director of human resources, when she's providing arguments that she must hear all the time as the director of human resources, it just didn't... It was... You know, it weighed against her credibility because after this long... Specifically, why would it weigh against your credibility? So I'm a judge. I mean, how would this affect the credibility? Well, there's a long list of facts, including in the 68-page attachment. Some of those certainly go to exercising court judgment. In her response, for example, she indicated that, you know, she denied most of those. She blamed others. I understand that she... I understand there's a debate here about whether or not she was telling the truth when she said, I didn't do this. And there were other people who said, yes, you did do it. And so the A.J. believes the other people. Yes, you did do it, right? But then what I'm saying to myself, I can't... When she's looking at length of service, she says, oh, the length of service, your length of service causes me not to believe you. Why? Well, I mean, I certainly... You have to explain it because otherwise it's irrational. And if it's irrational, it can't stand. Well, again, going back to paragraph 23, I think that... Try it again. Well, the statement... Let me try it for you. Okay. Isn't what you're saying that if you've been around the block and around the block and around the block enough times that you're able to recognize what poor judgment is because you're the HR director and you've been penalizing people for poor judgment for that whole time. And assuming that the facts are the facts as to what occurred, that you yelled at somebody, that you threw them out of your office, that you told them you'd never talk to them again, the things that are alleged, that somebody with a lot of experience is more able to recognize that as poor judgment than somebody with very little experience. Do I synopsize it for you? Correct, Your Honor. That's... Let me add to that. I mean, in paragraph 23, at the very end, she's arguing, and this is the explanation as to why length of service affects credibility, is she notes that Wilson says, at the end of the day, I was just following supervisor's orders. Correct. That is one argument that... So if you've worked for 20 years in a federal agency, is it reasonable to say I've been following supervisor's orders to create a hostile work environment? No. No, Your Honor. It's certainly not reasonable, and that's certainly why we are pointing out, in context, why her position as human resources director certainly goes to, you know, her credibility in this instance. You know, we certainly think when you weigh the three, essentially, pieces of evidence here, it certainly wasn't irrational for, you know, the board to find that Ms. Johnson did not consider years of service as an aggregating factor. We'd also like to address... Don't try me again about that page I was worried about earlier. I couldn't find it. It's in volume one or volume two. This is the evidence that they considered prior service in her favor. I'm not sure volume, Your Honor, in the joint appendix that said... I think... It didn't work, Your Honor. JA0022... Page 20. Paragraph 3. Page 20? Thank you. Okay. Thank you. We'd also like to address the issue of the hearing that Ms. Wilson's counsel brought up. You know, we would certainly direct you to JA1233, which is the waiver document. We certainly do not... There certainly is no conditional language within that document, and so we certainly do not believe that, you know, the board was irrational in reading through this document, seeing that there is no conditional language and finding that this was an unconditional waiver. Now, certainly that was a decision that counsel made. They did not have to make that decision if we proceeded forward without that. There would have been a hearing on these issues, but certainly we don't think it's irrational for the board to look at this unconditional document and find that it affected a complete waiver. And we'd also like to address the notice argument as well. You know, I think we had looked at the notice itself. A few things to point out. We're talking about one charge, unsatisfactory performance, and one specification. The notice being at JA23. We certainly think that that notice combined with, you know, the attachments, the investigative report, the investigative report certainly provided a multitude of details supporting this hostile work environment claim. And, you know, we would also point out that this is a hostile work environment claim. This is not simply one specific charge related to one particular event. It's an ongoing issue. And certainly, you know, based upon the information in that attached report, we think that there was no constitutional due process issue. Incidentally, on the plus factor, you know, I was having trouble finding that in the record. I don't think it works for you. It says, as a long-tenured Postal Service employee, I have considered your length of service as well as your discipline free. Here, it doesn't say I've considered it positively. It goes on to say at the end, da-da-da-da-da, this is not helping you. This is particularly true given that your experience should have resulted in a heightened awareness, yada, yada, yada. So, and we know when she testified as to how did she use prior service, it was against her. I don't see how you can say paragraph three is weighing her prior experience in a positive way. Well, it's looking into whether or not it's positive or not. At the end of the day, the deciding official found out it was not sufficient to mitigate. But it's also not saying, it's pushing the pendulum the other way. It's looking at it as a mitigating factor and saying, looking at this as a whole, it's not sufficient to mitigate, but it's not doing the opposite and pushing the pendulum the other way. What the paragraph says is that they represent inadequate justification. But it says by negative, pregnant, or whatever, it's saying that it is some justification. Any other questions? No. Thank you, Your Honor. Thank you. Your Honor, as a former administrative judge of the MSPB myself, I am well aware of the finality of withdrawing a request for a hearing in an MSPB case. The hearing withdrawal here was not taken or made lightly. Indeed, there is ample explanation in that withdrawal as to why the withdrawal is being made. It explains that the judge had refused and had abrogated her responsibility to compel the disputed facts being argued by the agency as the counter to the motion. Why would you withdraw then? Why would you want to make this argument at a hearing? Because I did not want to subject my client to, as I used the phrase in that withdrawal, to litigation by ambush. If we had gone to the hearing, the first we would have heard of the deciding official's explanation that this was a credibility statement, the aggravating factor comment would have been during her direct testimony. And then I would have been forced to cross-examine her instantaneously without preparation and without forewarning. That is not the hallmark of the MSPB process. This kind of indicates to me that this was litigation strategy on their part. This was not a strategy. It was the protection of my client's rights because I believe she was being denied those rights. The MSPB practice, as I've alluded to, has prided itself over the years on guaranteeing due process. Here I believe, and still believe, that my client was being denied that process and would have had to litigate an issue she had no forewarning of, which is anathema to MSPB process. The MSPB prides itself on disclosure in advance so both parties can adequately prepare. Here, that was missing. I would also comment about the deciding official's testimony at the deposition. This is a high-ranking postal employee, an intelligent woman. The questions leading up to her statement were about penalty. At no time was the phrase aggravating factor used. She came up with that all on her own in her answer to the question. You saw that her prior service wasn't helping her. She wrote it was an aggravating factor. That's what she said. I stopped the deposition at that point because that was a fatal comment, in my view. That had violated the law, as the government admitted. A statement by itself, it's an aggravating factor, is a due process violation. I stopped the deposition. I needed nothing more. The agency had an opportunity to explain it. You wanted nothing more. I will not deny that. The agency attorney was asked if she had any questions and she said I would reserve for trial. She could have asked the witness to explain. Instead, the explanation comes in weeks later. The motion for judgment could very well have been denied because then it would have served as a discovery tool which would be to get the disputed facts in response to the motion. None of this occurred because the judge refused to make the agency respond to the motion for judgment. If there was a tactic or a strategy here, I would say the Postal Service not responding to the motion within the 10 days required by MSPB regulation, that was the tactic. That was the strategy. The judge failed to make that response a requirement. Therefore, we withdrew the request for the hearing, but the day, the very day we came in possession of that affidavit in the agency submission, I reinstituted the request for the hearing. I believe it was then error by the judge to not approve that request. Therefore, the appellant would ask that firstly that a due process violation be found in that the agency did consider her prior service as an aggravating factor. In the alternative, at least a remand for a hearing, at least on the due process issues, so that can be finally pulled out. Again, I would ask for a special instruction that it go to another judge who has not predetermined all of this evidence and written it up analytically. Thank you. Thank you very much. That concludes our argument for this morning.